# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAMELA SUE ROHLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-0254-TWP-TAB |
| | ) | |
| ROLLS-ROYCE CORPORATION and, | ) | |
| ROLLS-ROYCE NORTH AMERICA, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment. This dispute arises from Plaintiff Pamela Sue Rohler's ("Ms. Rohler") employment relationship with the Defendants, Rolls-Royce Corporation ("RRC") and Rolls-Royce North America, Inc. ("RRNA") (collectively, "Rolls-Royce"). Ms. Rohler filed a four-count Complaint against Rolls-Royce alleging claims of gender discrimination and wage discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and the Equal Pay Act ("EPA"), respectively. *See 42* U.S.C. §§ 2000(e), *et seq.*; 29 U.S.C. § 206(d)(1). Additionally, Ms. Rohler alleges Rolls-Royce retaliated against her for engaging in conduct protected under the Civil Rights Act and for engaging in the protected activity of reporting the submission of fraudulent claims to the U.S. government under the False Claims Act ("FCA"). *See* 42 U.S.C. § 2000e-3; 31 U.S.C. §§ 3730(a)-(b), and (h). For the reasons set forth below, Rolls-Royce Motion for Summary Judgment (Dkt. 41) is **GRANTED.**

# I. BACKGROUND

## A. Ms. Rohler's Early Employment at RRC[1]

For the purposes of this summary judgment motion, the following material facts are not in dispute. Ms. Rohler, who has a Bachelors degree in accounting and a CPA Certificate from the State of Indiana, began working for RRC in an accounting position in August 1999. In March 2004, Ms. Rohler accepted a finance manager position with Rolls-Royce Defense Services, which was a smaller business division of Defense North America ("DNA").[2] After accepting her new position within the company, Ms. Rohler was supervised by Dick Gurley ("Mr. Gurley"). Mr. Gurley, who has a degree in engineering, started working for RRC in 1974 and since that time he has held a variety of positions within the company. In August 2006, RRC decided to reorganize its business units in an effort to operate more efficiently, including reorganizing DNA. As a result of the reorganization, Ms. Rohler was asked to accept a new position entitled Manager of Life Cycle Cost and Data Management. This position required an accounting or finance degree. Moreover, Ms. Rohler's new position required her to forecast life cycle tables as well as supervise two lower level employees. Ms. Rohler accepted the position and began to work as a manger within RRC in October 2006. Her supervisor was another RRC employee, Mike Nellinger ("Mr. Nellinger"). Ms. Rohler contends that Mr. Nellinger promised she would receive a pay increase with the new position.

## B. Consolidation of Management Positions within RRC

During the same time period, another RRC employee, Otto Enzmann ("Mr. Enzmann"), was similarly asked to take on a new position as Manager of Reliability and Maintainability.

---

[1] Ms. Rohler has failed to set forth a Statement of Facts in Dispute Section in her response brief (Dkt. 62) in accordance with Local Rule 56-1(b). Accordingly, under Local rule 56-1(e), the Court may accept the factual assertions set forth in Defendants' opening brief as existing without controversy.

[2] Defense North America is a smaller business division with RRC.

This position required a Bachelors Degree in engineering, 10-14 years of engineering experience, and expertise in the area of gas turbine engine service. Additionally, the Manager of Reliability and Maintainability would be responsible for supervising Ms. Rohler. Mr. Enzmann subsequently accepted the position in October 2006 and was responsible for collecting reliability data, which Ms. Rohler would then utilize in performing her life cycle cost work.

In the summer of 2007, Mr. Enzmann expressed an interest in leaving his managerial position. Because Mr. Enzmann was leaving for another position, his managerial position would become vacant. However, instead of selecting another individual to take over Mr. Enzmann's former responsibilities, RRC decided to consolidate Mr. Enzmann's position with Ms. Rohler's position to create a senior manager position called Reliability and Maintainability Life Cycle Cost Senior Manager ("Senior Manager"). RRC sought to consolidate these positions together into one in an effort to create a more efficient workplace. Like Mr. Enzmann's former position, the newly created position required an engineering degree, 10-14 years of engineering experience, managerial experience, and expert knowledge of gas turbine engine services. Finally, as part of the Senior Manager's responsibilities, the manager would become the direct supervisor over Ms. Rohler and another RRC employee.

On September 7, 2007, Ms. Rohler was informed that Mr. Gurley was selected for the Reliability and Maintainability Life Cycle Cost Senior Manager position. Mr. Gurley had an engineering degree, more than 30 years of experience with RRC, including 11 years of reliability experience, and had knowledge of gas turbine engines. After assuming his new position within RRC in November 2007, Mr. Gurley became the direct and immediate supervisor of Ms. Rohler and another employee. Ms. Rohler continued to hold her Manager of Life Cycle Cost and Data Management position under Mr. Gurley and supervised two other RRC employees. Shortly

before the year ended, Ms. Rohler received a 2007-year end performance review[3] from her former supervisor, Mr. Nellinger. While Ms. Rohler's review indicated that she had satisfied her performance objectives as a manager, her review stated: "The Relationship between Sue and her immediate boss (Mr. Gurley) ha[s] gotten off to a rocky start since the re-organization. She needs to develop a more appropriate relationship with Mr. Gurley." (Dkt. 43-1 at 15.)

## C.    Ms. Rohler Informs RRC of Alleged Discriminatory Action

In February 2008, David Dial ("Mr. Dial"), the Director of Commercial Services for DNA, directed Mr. Gurley to assume Ms. Rohler's supervisory responsibilities as the Senior Manager. Due to the economic climate, RRC was in the process of "running lean" by reducing its report layers of management. In an effort to accomplish this goal, in February 2008, Mr. Dial decided to collapse Ms. Rohler's supervisory responsibility into Mr. Gurley's position, so there would only be one supervisor, instead of two, for a group of five employees. Ms. Rohler's salary level remained unchanged; however, her role within RRC changed. After February 2008, Ms. Rohler became the Life Cycle Cost subject matter expert within the department. Under this new role, Ms. Rohler continued to work under Mr. Gurley, and she no longer had any supervisory responsibilities.

On March 17, 2008, Ms. Rohler met with Human Resources Business Partner Leslie Taylor ("Ms. Taylor"). As part of Ms. Taylor's responsibilities as the Human Resources Business Partner for RRC, she responds to employee complaints and investigates allegations of discrimination. During the meeting, Ms. Rohler complained to Ms. Taylor that Mr. Gurley was given her job and had taken over her responsibilities. On March 18, 2008, Ms. Rohler met with Ms. Taylor again; however, she informed Ms. Taylor that she had retained legal counsel and was

---

[3] RRC conducts annual reviews of its employees' performances within the company through an evaluation process called Performance Development Review. *See Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 977 (S.D. Ind. 2010) (discussing in detail RRC's annual employee review process).

considering filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). At this point in time, Ms. Taylor explained the EEOC process to her and told her she would investigate her allegations of discrimination before their next follow-up meeting on March 26, 2008. Before Ms. Taylor could meet with Ms. Rohler again after their March 18th meeting, she received a letter from Ms. Rohler's attorney informing RRC that she intended to file a charge of discrimination with the EEOC. Subsequently, on March 28, 2008, Ms. Rohler filed a charge of discrimination with the EEOC with an attached letter from her attorney.[4] (*See* Dkt. 43-7.)

## D. Ms. Rohler's Deteriorating Working Relationship with Mr. Gurley

On March 28, 2008, Mr. Gurley contacted Ms. Rohler through email and requested that they meet together so that he could obtain a status report from her on a particular project. During that meeting, Ms. Rohler became very indignant when Mr. Gurley asked her for a status report. Ms. Rohler responded to Mr. Gurley's request by stating that there was no reason for her to give him a progress report because "he didn't know anything about the project." In addition, Ms. Rohler told Mr. Gurley that any such report was "unnecessary" because she was "competent." Finally, in Mr. Gurley's affidavit, he stated that he informed Ms. Rohler that she had to "do what he says," as her supervisor. However, in response to this she immediately walked out of the meeting and left the facility for the day. After this meeting, Ms. Rohler continued to resist directions given to her by her supervisor regarding her various projects. Specifically, on April 17, 2008, Mr. Gurley informed Ms. Rohler that the proposed timeframe for one of her projects was too long and needed to be shortened. Ms. Rohler told him that his request was "a waste of time" and that she "did not want to comply." (Dkt. 43-4 at ¶ 17; Dkt. 43-3, 169:18-23.)

---

[4] Plaintiff amended her charge of discrimination in September 2008 and listed the earliest date on which Defendants allegedly treated her unlawfully as August 2007. (Dkt. 43-14.)

Throughout April 2008, Ms. Rohler continued to resist her supervisor's directions and orders that he gave to her through email communications between them. Specifically, on April 22, 2008, Ms. Rohler sent an email to Mr. Gurley containing a document he needed to review. Within the email's body, Ms. Rohler stated that the review of the particular document was "overkill" and that she "resent[ed] being treated like a naughty toddler and monitored so closely." (Dkt. 43-6.) Additionally, Ms. Rohler stated that she told Mr. Gurley that she "did not need or want his supervision." (Dkt. 43-3, 161:13-15.)

As a result of the deteriorating work relationship between Ms. Rohler and Mr. Gurley, Ms. Rohler met with Carrie Elkins ("Ms. Elkins"), the Senior Human Resources Business Partner, and Mr. Gurley on June 26, 2008 to discuss her work behavior. At this meeting, Ms. Rohler acknowledged that she would continue to refuse to give status updates on her projects. Additionally, she stated that she did not want to give Mr. Gurley credit for her work. In July 2008, Mr. Gurley prepared Ms. Rohler's 2008 mid-year performance review. In her review, Mr. Gurley highlighted the problems attributable to Ms. Rohler's attitude towards him as well as her other team members on various projects. Specifically, Mr. Gurley stated that Ms. Rohler struggled with "authentic communication" throughout the year. Specifically, he stated her attitude was "rude and boisterous." He further noted that "she was not going to submit either to my supervision or to my review of her work." (Dkt. 43-4 at 11-12.)

**E.     Ms. Rohler's Email Communications with DNA Management**

On August 6, 2008, Ms. Rohler sent an unsolicited email to Dennis Jarvi, the President of DNA, explaining her views of the events at DNA, which led to the filing of her EEOC charge. She was also very critical of Mr. Gurley and other DNA executives' management skills, and she made her feelings known on this issue throughout her email. In one portion of the email, Ms.

Rohler stated that she uttered the word "barf" at a customer service meeting in reaction to a compliment being given to Mr. Gurley by a DNA executive.

On August 21, 2008, Ms. Rohler sent an email to Mr. Gurley in which she included the following among a list of other bulleted items: "7/22/08 Canadian Air Force data taken to Campaign Review Board. I ha[ve] not reviewed the data – and I hear that it was based on bogus information – which is in violation of the Business Evaluation policy." Shortly after she sent this email, Ms. Elkins and Mr. Dial requested a meeting with Ms. Rohler to discuss her recent behavior. On August 28, 2008, Mr. Dial wrote an internal memorandum and presented it to Ms. Rohler that outlined her inappropriate behavior as it related to sending "inappropriate emails," her "unwillingness to perform properly assigned work," and her "communication/interpersonal skills." (Dkt. 43-13.) Mr. Dial went on to inform Ms. Rohler that sending an email to the President of DNA was disrespectful to Mr. Gurley and completely unacceptable. Mr. Dial informed Ms. Rohler she needed to follow the chain of command and perform the work assigned to her by Mr. Gurley. At the conclusion of the meeting, Ms. Rohler requested to be transferred to a different job with RRC. Subsequently, Ms. Rohler accepted a purchasing position within RRNA in September 2008. Additional facts are added below as needed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all

reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

As an initial matter, Rolls-Royce emphasizes, without dispute from Ms. Rohler that she did not work for RRNA at any time during the period when she alleged she was discriminated against by Rolls-Royce under Title VII, the Equal Pay Act, or the False Claims Act.  *See* 42 U.S.C. §§ 2000(e), *et seq.*; 29 U.S.C. § 206(d)(1); 31 U.S.C. §§ 3730(a).  Accordingly, Ms. Rohler cannot set forth a viable claim against RRNA.  *See Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 981 (S.D. Ind. 2010) (holding that the plaintiffs could not advance any viable claims against the defendants because neither of the plaintiffs worked for the parties during the relevant time period in the case).  Therefore, Defendant Rolls-Royce North America, Inc. is hereby dismissed entirely from this action.

## A.     Title VII Sex Discrimination Claims

Ms. Rohler brings a number of Title VII discrimination claims based on sex:  she alleges that she was discriminated against on the basis of her sex by the Rolls-Royce when they (1) failed to provide her a promotional level salary raise in October 2006; (2) failed to promote her to the Senior Manager position based on her sex; and (3) reassigned her supervisory responsibilities to Mr. Gurley based on her sex.  The Court will address each of these issues in turn.

### 1.     Failure to Offer a Promotional Salary Raise Claim

Before addressing Ms. Rohler's Title VII discrimination claims, Rolls-Royce argues that Ms. Rohler's sex discrimination claim related to RRC's failure to provide her with a promotional salary raise in October 2006 fails because it is untimely.  A claimant may file a charge of discrimination with the EEOC "within a 180 day period (or in some states which share administrative responsibilities with the EEOC, such as Indiana, a 300-day period) prior to her filing a charge of discrimination."  *Randall*, 742 F. Supp. 2d at 986; *see also Gaines v. White River Envtl. P'ship*, 2003 WL 1827209, at **1 (7th Cir. Apr. 4, 2003) (applying the 300 day period in finding that plaintiff's Title VII claims based on race and sex discrimination were timed-barred).  Here, Ms. Rohler filed her first charge of discrimination with the EEOC on March 28, 2008.  Ms. Rohler waited until 2008 to file charges stemming from RRC's alleged failure to offer her a raise in October 2006 when she accepted a managerial position; this is well in excess of the 300-day limit for Title VII claims.  Accordingly, the Court finds that Ms. Rohler's claim of sex discrimination as it relates to RRC's failure to offer her a raise in October 2006 is untimely.

## 2.      Failure to Promote Claim

Next, Ms. Rohler argues that Rolls-Royce violated Title VII when they allegedly discriminated against her by failing to promote her to the newly-created Senior Manager position because of her sex.  Title VII makes it unlawful for an employer "to fail to refuse or hire…or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In challenging summary judgment under Title VII, a plaintiff may utilize two available methods of proving discrimination: the "direct method" or the "indirect method." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002); *see also Jordan v. City of Gary*, 396 F.3d 825, 832 (7th Cir. 2005) ("To prove discrimination via direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.") (internal quotations and citation omitted).   Because Ms. Rohler does not present any direct evidence of discrimination as it relates to her failure to promote claim in defeating Defendants' summary judgment motion, she must proceed under the indirect, burden-shifting method set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  To establish a *prima facie* case of discrimination under that approach, Ms. Rohler must demonstrate "that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified than [Ms. Rohler]." *Jordan*, 396 F.3d at 833; *see also Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003) (articulating the elements a plaintiff must show under the indirect method in a failure-to-promote context).

Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision.  *McDonnell*

*Douglas*, 411 U.S. at 802; *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). Once the defendant satisfies its burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's explanation was pretextual. *Farrell*, 421 F.3d at 613. Pretext requires more than showing that the decision was "mistaken, ill considered or foolish…so long as [the employer] believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Farrell*, 421 F.3d at 613 (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2010)).

Rolls-Royce argues that even though Ms. Rohler can meet the first and the third requirements under the *McDonnell Douglas* burden shifting framework, she cannot meet the second and fourth requirement and, therefore, she fails to make a *prima facie* case of discrimination. The Court agrees. In order to meet the second requirement of her *prima facie* case, Ms. Rohler must demonstrate that she was qualified for the position. In Ms. Taylor's affidavit, she stated that the newly-created Reliability and Maintainability Life Cycle Cost Senior Manager position had a number of prerequisite qualifications, such as: 1) holding a Bachelors Degree in engineering; 2) 10-14 years of engineering experience; 3) previous management experience; and 4) having subject matter expertise in gas turbine engines. (Dkt. 43-1.) Here, it is undisputed, and Ms. Rohler admits, that she does not hold an engineering degree and lacks the required 10-14 years of engineering experience required for the new position. (*See* Dkt. 62 at 8.) Moreover, Ms. Rohler's accounting degree along with her responsibilities as the Life Cycle Cost Manager did not sufficiently provide her with the qualifications necessary to take on the duties of the position. As part of its duties, the Senior Manager would "take raw data regarding an engine, perform analysis to determine how reliable [the] engine is, and identify modifications needed to

increase reliability." (Dkt. 43-4 at 2.) Given these duties, Ms. Rohler's educational background, her previous work experiences, and her own admissions relating to her lack of an engineering degree, the Court concludes that she does not have the adequate skills and technical knowledge to become the Senior Manager and analyze the performance issues of gas turbine engines. Accordingly, Ms. Rohler has not met the second element of her *prima facie* case.

Additionally, in order to meet the fourth requirement of her *prima facie* case, Ms. Rohler needed to show that she was as qualified as Mr. Gurley for the position of Senior Manager. The Seventh Circuit has held that persons who do not have the same or equivalent positions are not similarly situated with respect to a potential promotion. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001). In this case, the duties and responsibilities associated with Ms. Rohler's Life Cycle Cost managerial position were not similar to the duties covered by Mr. Gurley, as the Reliability and Maintainability manager. As discussed above, Mr. Gurley's former position required engineering knowledge as well as additional knowledge of gas turbine engines. Mr. Gurley is an engineer who has over 30 years of gas turbine engine service experience along with "over 11 years of experience doing reliability-related work." (Dkt. 43-4 at 2.) Unlike Mr. Gurley's extensive background in engineering and reliability work, Ms. Rohler has not sufficiently demonstrated that her previous managerial experience makes her as qualified as Mr. Gurley to take over the duties as the Senior Manager. For example, prior to RRC's reorganization, Ms. Rohler worked as a finance manager and after the reorganization she became the Manager of Life Cycle Cost and Data Management. Therefore, the Court finds Ms. Rohler has not met the fourth element of her *prima facie* case. Alternatively, even if Ms. Rohler were able to establish a *prima facie* case, RRC's reasons for promoting Mr. Gurley, due to his

engineering background and reliability work experience, were legally sufficient nondiscriminatory reasons that Ms. Rohler has not shown to be pretextual.

### 3. Reassignment Discrimination Claim

Next, Ms. Rohler alleges that Rolls-Royce discriminated against her in violation of Title VII when they reassigned her supervisory duties to Mr. Gurley as the Senior Manager in February 2008. Defendants contend that Ms. Rohler's discrimination claim on this issue also fails like her other Title VII claims because she cannot establish her *prima facie* case. As discussed previously, in order for Ms. Rohler to establish a *prima facie* case for discrimination, she must demonstrate "that: (1) she is a member of a protected class; (2) she was performing her job to her employer's legitimate expectations; (3) that in spite of her meeting the legitimate expectations of her employer, she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated male employees." *Markel v. Bd. of Regents Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002).

While Ms. Rohler can meet the first and second elements of the test, the issue that remains is whether a change in her duties and responsibilities in February 2008 by RRC amounts to an adverse employment action. An adverse employment action in most situations involves economic injuries such as dismissal, suspension, failure to promote, or diminution in pay. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998) ("A tangible employment action in most cases inflicts direct economic harm."); *Markel*, 276 F.3d at 911. In addition, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Importantly, in this case, while Ms. Rohler's supervisory responsibilities were shifted to Mr. Gurley after the creation of the new manager position at RRC, her salary continued to remain the same. In addition, it is clearly apparent that Ms. Rohler was dissatisfied with her new role within the company as evidence by her confrontational meetings with her direct supervisor. Immediately, after the position changes went into effect, Ms. Rohler was adamant in her refusal to give Mr. Gurley progress reports on her projects, telling him that it was a "waste of time" and that she "did not want or need his supervision." As discussed above, the fact that Ms. Rohler was unhappy with her new position and the shift in her supervisory duties does not automatically constitute an adverse employment action. If this were the case, it would lead to countless discrimination lawsuits against employers by employees upset over trivial changes related to their employment status. *See Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) ("Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.").

The reasoning applied by the Seventh Circuit in *Place v. Abbott Labs.*, 215 F.3d 803 (7th Cir. 2000), clarifying what constitutes an adverse employment action with respect to a loss of supervisory duties is applicable here. In *Abbott Labs*, the plaintiff was transferred to another position within the company after she reported being sexually harassed by her one-time supervisor, with whom she had engaged in an affair the previous year. *Id.* at 806. As a result of the transfer, plaintiff retained the same title, pay, and benefits, but she lost her supervisory responsibilities. *Id.* Viewing her transfer as a demotion, the plaintiff sued her company claiming it retaliated against her in violation of Title VII. *Id.* In holding that the plaintiff's transfer resulting in the loss of her supervisory duties did not constitute a materially adverse action, the Seventh Circuit stated:

Place's beef is that she moved from an interesting job she liked that involved overseeing several other people to a boring job she didn't like and that lacked any supervisory duties….Being moved from one job to the another…does not meet the [adverse action] test. There was no guarantee that Place would remain forever in the job she held before the transfer. Researching, creating, preparing for mass production pharmaceutical products is a dynamic business that involves regularly shifting people from one job to another, as one project is completed and another is begun. Her most viable complaint is that she had diminished responsibilities…. Place did not have supervisory responsibilities in her new job, but some grade 15 positions at Abbott involve supervisory duties and others do not. Supervising other workers in one capacity did not mean that person would always have supervisory duties thereafter.

*Id.* at 810.

Like in *Abbott Labs*, the reassignment of Ms. Rohler's supervisory duties to Mr. Gurley, does not by itself, constitute a materially adverse action. Because of RRC's attempts to constantly reorganize the company in order to make it more efficient, Ms. Rohler should have been aware, like the plaintiff in *Abbott Labs*, that there was no guarantee that she would retain her current supervisory duties. Moreover, RRC did not reduce Ms. Rohler's benefits or her salary as a result of the change in her positions with the company. *See Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 702-03 (7th Cir. 2001) (holding that "a lateral transfer without a loss in benefits does not constitute an adverse employment action."). Therefore, the Court finds that Ms. Rohler cannot demonstrate the she suffered an adverse employment action with respect to her reassignment discrimination claim. Because Ms. Rohler cannot establish her *prima facie* case and has not set forth sufficient evidence to challenge Rolls-Royces' nondiscriminatory reasons for changing her position, Ms. Rohler has not met her burden under *McDonnell Douglas*. Accordingly, the Court finds that Ms. Rohler has not set forth a genuine issue of material facts for which a finder of fact may reasonably infer that she was discriminated against based on her sex; therefore, Rolls-Royces is entitled to summary judgment.

**B.      Equal Pay Act Claims**

Next, Ms. Rohler alleges that Rolls-Royce discriminated against her in violation of the Equal Pay Act ("EPA") when she alleges she was paid less as a Manager of Life Cycle Cost and Data Management than her male counterpart, Mr. Gurley, as the Senior Manager.  Rolls-Royce argues that Ms. Rohler's Equal Pay Act claim fails as a matter of law. The Court agrees.

The EPA prohibits employers from discrimination against employees on the basis of sex "for equal work on jobs the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).  To establish a *prima facie* case of wage discrimination under the EPA, Ms. Rohler must show, by a preponderance of the evidence, that: (1) higher wages were paid to a male employee; (2) for equal work requiring substantially similar skill, effort and responsibilities; and (3) the work was performed under similar working conditions.  *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (internal quotations and citations omitted). Additionally, no proof of discriminatory intent is required.  *Id.*

As an initial matter, Rolls-Royce contends that Ms. Rohler's EPA claim fails as a matter of law because she cannot meet the first two requirements of her *prima facie* case for wage discrimination.  First, Rolls-Royce asserts that based on Ms. Rohler's admissions in this case she has no personal knowledge regarding whether Mr. Gurley was paid a higher wage than she was when he became the Senior Manager in February 2008.[5]  In support of its argument, RRC cites Ms. Rohler's deposition testimony given in response to questions regarding the nature of Mr.

---

[5] Ms. Rohler stated in her declaration that in 2007 and 2008 she was making approximately $87,000.00 annually. (Dkt. 63-2.)

Gurley's salary in 2008. When asked by defense counsel about whether she knew what Mr. Gurley's salary was in January 2008, she replied, "I can only guess what I knew it was in late 2007, which was $157,440." (Dkt. 43-2 at 127: 7-10.) She further agreed with defense counsel that she had no personal knowledge of what Mr. Gurley's salary was in 2008. (*Id.* at 127:11-14.) Finally, when asked how she was able to calculate Mr. Gurley's salary in 2007, before he accepted the Senior Manager position, she stated, "I figured it out…[o]n the pay transferred from the department he was in to the department he came to." (*Id.* at 127:15-128:2.) Based on these statements, Ms. Rohler's knowledge of Mr. Gurley's salary in 2008 rests on speculation that is unsupported by admissible evidence. The Seventh Circuit has ruled that "such unsupported speculation is insufficient to overcome a motion for summary judgment." *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 893 (7th Cir. 2010) (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008)). Regardless of whether Ms. Rohler has set forth sufficient facts to establish the first element of her *prima facie* case, her EPA claim still fails because she cannot meet the second element.

Under the second element, as articulated in *Warren*, the plaintiff must show that the disparity in wage based on sex was "for equal work requiring substantially similar skill, effort and responsibilities." *See Warren*, 516 F.3d at 629. As previously discussed, the position of Manager of Life Cycle Cost and Data Management and the position of Reliability and Maintainability Life Cycle Cost Senior Manager are not equivalent because the latter requires an engineering degree. While both positions involve tasks related to statistical analysis, the Senior Manager position involves the analysis of gas turbine engines to identify the necessary modifications needed to increase reliability. (*See* Dkt. 43-4 at 2.) This type of job duty requires an individual with an engineering degree and years of engineering experience, specifically with

gas turbine engines. (*See* Dkt. 43-1 at 3.) On the other hand, the Life Cycle Cost position that Ms. Rohler accepted in 2006 does not require an engineering degree, but an accounting degree. (*Id.*) Moreover, Ms. Rohler conceded in her deposition that the skills utilized by her and Mr. Gurley to perform each of their respective positions with RRC in 2008 were "separate and distinct." (Dkt. 43-3 at 140:15-17.) The Seventh Circuit articulated that "the proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman (or anything more, if the jobs are truly identical) and there are no skill differences." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771-72 (7th Cir. 2007). Here, the managerial jobs at issue were not the same given their vastly different educational and work experience requirements. More importantly, these differences were also apparent to Ms. Rohler because she conceded during her deposition that the skills attributable to Mr. Gurley and herself were "separate and distinct." Therefore, the Court finds that Ms. Rohler's EPA claim fails as a matter of law, and Rolls-Royce is entitled to summary judgment on this issue.

## C.    Title VII Retaliation Claims

Ms. Rohler also alleges that Rolls-Royce retaliated against her in violation of Title VII after she complained to RRC's human resource department and after she filed a charge of discrimination with the EEOC in March 2008. Specifically, she contends that Rolls-Royce reassigned her supervisory duties to Mr. Gurley in retaliation for complaining of discrimination to RRC. She further alleges that she was placed on a "termination list" after she informed Rolls-Royce that she intended to file a charge of discrimination with the EEOC. The Court will address each of Ms. Rohler's retaliation claims in turn.[6]

---

[6] Ms. Rohler also alleged that David Dial, the Director of Customer Services for RRC's Defense North America, began to closely monitor her work progress beginning in March 2008 in retaliation for filing a charge of discrimination with the EEOC. However, the Court will not analyze this claim in detail because it was abandoned by Ms. Rohler when she failed to present arguments to the Court on this issue in response to Defendants' summary

### 1.    Reassignment Retaliation Claim

Rolls-Royce argues that Ms. Rohler's retaliation claim based on the reassignment of her supervisory duties fails for a number of reasons. They contend that there is no basis for Ms. Rohler's first retaliation claim when her reassignment of duties came *before* the filing of her EEOC charge. Alternatively, they argue that her retaliation claim is without merit because she has not presented sufficient evidence establishing that she had engaged in a protected activity prior to her EEOC filing in March 2008. Therefore, they argue they should be entitled to summary judgment on this issue. The Court agrees.

Title VII prohibits an employer from retaliating against an employee for engaging in conduct that is protected under the Act. *See* 42 U.S.C. § 2000e-3(a). A plaintiff may bring a retaliation claim using either the "direct" or "indirect method." *Maine v. Potter*, 394 F.3d 977, 983. Under the "direct method," the plaintiff must set forth "evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Leonard v. Eastern Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010). The indirect method also requires the first two elements of the direct method, "but instead of providing a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Id.* (citing *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009)).

Ms. Rohler's retaliation claim relating to the reassignment of her supervisory duties is doomed from the start because she has not presented any evidence suggesting that Rolls-Royce was aware that she was engaged in a protected activity *prior* to the alleged retaliatory

---

judgment motion. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deemed plaintiff's claim abandoned after he failed to raise it in his district court brief in opposition to summary judgment).

reassignment. "An employee can honestly believe she is the object of discrimination, … if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007-08 (7th Cir. 2000); *see also Gates v. Caterpillar, Inc.*, 513 F.3d 680, 687 (7th Cir. 2008). In support of her claim, Ms. Rohler stated in her briefing to the Court that she "complained to Elkins in Human Resources that she was not being [paid] equally to her male counterpart, Reliability Manager." (Dkt. 62 at 3.) Additionally, she states in her briefing that she told "Dial in December 2007 that the raise she had been promised was not going to occur and she was paid enough when she complained about the pay disparity with Gurley." (*Id.*) However, none of the alleged material facts mentioned above by Ms. Rohler are supported or even suggested in the record. Ms. Rohler attempts to point to her answers to interrogatories to support these statements, but her answers do not support these alleged statements. (*See* Dkt. 62-4 at 7, 10.) Moreover, both Mr. Dial and Ms. Elkins stated in their declarations to the Court that Ms. Rohler never informed them of any situation in which she felt she was being discriminated against based on her sex by RRC prior to March 2008. (Dkt. 43-5 at 2; Dkt. 43-11 at 1.) The Seventh Circuit has articulated that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *United States v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998). Like in *Torres*, these statements made by the Plaintiffs were self-serving and unsupported by the record. Accordingly, the Court finds that Ms. Rohler's retaliation claim based on her reassignment fails as a matter of law; therefore, Rolls-Royce is entitled to summary judgment on this issue.

### 2.      Termination List Claim

Ms. Rohler alleges that Rolls-Royce retaliated against her in violation of Title VII by placing her on a termination list.  Specifically, Ms. Rohler alleges that an IT department employee informed her that she was placed on the "termination list" when he came to her office to inspect her computer in March 2008.  (Dkt. 43-3 at 149:6-14.)  Rolls-Royce argues that this claim is meritless for a number of reasons.  First, Rolls-Royce contends that it is based on inadmissible hearsay, and therefore cannot be considered by the Court during summary judgment.  Additionally, Rolls-Royce contends Ms. Rohler cannot survive summary judgment on this issue because she cannot demonstrate that she suffered an adverse employment action by being placed on such a list or show that she was placed on the list because she engaged in a protected activity.

The Court does not need to reach the issue of whether the alleged statement constitutes inadmissible hearsay because Ms. Rohler's retaliation claim fails on other grounds.  Taking the statement as a whole and in the light most favorable to Ms. Rohler, the alleged statement made by the IT employee amounts to an unfulfilled threat because Ms. Rohler admits that she was never terminated.  On the issue of unfulfilled threats, the Seventh Circuit stated that "[a]n unfulfilled threat, which results in no material harm, is not materially adverse."  *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003).  Because Ms. Rohler cannot demonstrate that she suffered a materially adverse employment action, the Court need not analyze in detail the remaining elements under either the "direct" or "indirect" method.  Accordingly, the Court finds that the Rolls-Royce is entitled to summary judgment on this issue.

## D.    False Claims Act

Lastly, Ms. Rohler alleges that Rolls-Royce  retaliated against her in violation of the False Claims Act ("FCA").  Specifically, she alleges that after she sent a letter to the Finance Director of DNA complaining about false information being created for a combat aircraft that would be sold to Canada, she received a negative performance review in July 2008. Furthermore, she alleges that after she sent an email to Mr. Gurley informing him of "Canadian Air Force data" that was "based on bogus information" being sent to the Canadian government, she received a written warning in August 2008.  In short, Ms. Rohler contends that she is being retaliated against as a whistleblower under the FCA.  The Court disagrees.

The FCA was enacted to enhance the federal government's ability to recover losses sustained by fraudulent activity perpetrated against it. S. REP. NO. 99-345, at 1-2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266-67.  Specifically, to combat fraud, the FCA imposes civil liability on a party who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" paid by the government.  31 U.S.C. § 3729(a)(1) and (2).   The FCA further protects employees from being demoted, suspended, threatened, harassed, or in any other manner discriminated against who have filed or might file a *qui tam* action alleging their employer defrauded the U.S. government.  31 U.S.C. §§ 3730(b) and (h).  In order to prevail on her retaliation claims, Ms. Rohler must demonstrate that:  (1) her actions were taken "in furtherance of" a FCA enforcement action and were therefore protected by statute; (2) that RRC had knowledge that she was engaged in this protected activity; and (3) their terminations were motivated – at least in part – by the protected conduct.  *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002).

In this case, Ms. Rohler has failed to satisfy all of the elements necessary for prevailing on her FCA retaliation claim. First, Ms. Rohler's FCA retaliation claim fails because she cannot demonstrate that she was engaged in a protected activity. The Seventh Circuit articulated that the standard in determining if an employee's actions are protected under the FCA is whether: the employee in good faith believes, and a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government. *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 479-80 (7th Cir. 2004). Ms. Rohler's basis for her FCA claim relates to a conversation in a cafeteria in July 2008 about aircraft data, in which she allegedly overheard Mr. Gurley say "I don't care. Just make it up." in response to one employee's question. Based on this tenuous fact pattern, a reasonable employee would not conclude that RRC was attempting to defraud the U.S. government. Ms. Rohler concedes that she cannot remember the substance of the question that elicited Mr. Gurley's alleged response. More importantly, she stated she was "not certain" if any "false data" was presented to the U.S. government. *See U.S. ex rel. Grant v. Thorek Hosp.*, 2008 WL 1883454, at *4 (N.D. Ill. Apr. 25, 2008) (finding that plaintiff failed to plead sufficient facts suggesting she was engaged in a protected activity when she had no knowledge of any false claim being submitted to the government). For the same reasons noted above, the Court finds that Ms. Rohler's email to Mr. Gurley would not lead a reasonable employee to conclude that RRC was defrauding the U.S. government. Accordingly, Ms. Rohler has failed to meet the first element of her FCA retaliation claim.

Second, Ms. Rohler cannot show that either of her missives put RRC on notice of the possibility of a *qui tam* action. For example, Ms. Rohler's email to Mr. Gurley relating to the "Canadian Air Force" data did not allude to any information prepared in an effort to defraud the

U.S. government—a requirement for filing an FCA claim. The email merely stated it was a violation of the "Business Evaluation policy." This email would not send sufficient notice to RRC that Ms. Rohler was engaged in a protected activity, given that part of her job duties is "to not allow speculative data to go into [cost] forecast[s]." (Dkt. 43-3 at 255:14-16.)[7] Thus, the Court finds that Ms. Rohler has failed to demonstrate that Rolls-Royce was on notice that she was engaged in a protected activity. Because Ms. Rohler cannot show that Rolls-Royce was on notice that she was engaged in any protected activity, she cannot establish that her negative performance review was motivated in any way by her actions.[8] Accordingly, the Court finds that Rolls-Royce is entitled to summary judgment on this issue.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 41) is **GRANTED**. In addition, Defendant Rolls-Royce North America, Inc. is hereby dismissed entirely from this action.

**SO ORDERED.**     03/30/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[7] The Court is unable to analyze whether the Ms. Rohler's letter to the Finance Director would have placed RRC on notice of a possibility of a *qui tam* action because Plaintiff stated in response to a discovery request by Defendants that they no longer posses such a document. (Dkt. 63 at 29-30.)

[8] The Court concludes that Ms. Rohler's negative performance review and written warning was a result of her history of inappropriate behavior directed at her supervisor, Mr. Gurley as well as her inappropriate emails to management of DNA.

DISTRIBUTION:

Michael C. Kendall
KENDALL LAW OFFICE
mckatlaw@aol.com

James F. Ehrenberg, Jr.
BARNES & THORNBURG LLP
jehrenberg@btlaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com